UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
COOGI PARTNERS, LLC,                          :
                                              :        Case No. 1:25-cv-03837-KPF
Plaintiff,                                    :
                                              :
-against-                                     :
                                              :
LOUIS VUITTON MALLETIER, S.A.,                :
LOUIS VUITTON USA, INC., and                  :
PHARRELL WILLIAMS,                            :
                                              :
                                              :
Defendants.                                   :
-----------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**COX LAW FIRM LLC**
William H. Cox, Esq.
Peter J. Vranum, Esq.
43 West 43rd Street, Suite 137
New York, NY 10036-7424
Tel. No.: (973) 973-1797
WCox@lawcox.com
PVranum@lawcox.com

**LAW OFFICES OF H.W. BURNS**
Howard W. Burns, Jr., Esq.
Carnegie Hall Towers – 37th Floor
(Baritz & Colman)
152 West 57th Street
New York, New York 10019
Tel. No.: (917) 885-5671
Howard@HWBurnsLaw.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................... iii

**PRELIMINARY STATEMENT** ....................................................................................1

I.    **INTRODUCTION**............................................................................... 1

II.   **STATEMENT OF FACTS**..................................................................2

III.  **LEGAL STANDARD**.......................................................................... 5

IV.   **ARGUMENT**.......................................................................................6

    A. Copyright Infringement.............................................................................6

       1.  Defendants Have Copied COOGI's Artistic Concepts and Overall Aesthetic Impressions  ........................................................................................... 7

       2. Defendants' Allegation That COOGI Has Admitted That Defendants Did Not Copy COOGI's Design Is Without Any Basis...............................................7

       3. COOGI's Copyright Claim Meets The Ordinary Observer Test and, While Not Applicable in this Instance, Also Meets the More Discerning Test  ..................7

       4. At the Very Least Plaintiff Has Alleged Clear Indirect Evidence of Access ......... 8

       5. The Works are Substantially Similar ……………...……………………………  9

    B. Trade Dress Infringement…………..…………………………….…..... 10

       1. The FAC Identifies a Specific, Nonfunctional Combination of Elements Capable of Protection………………………………………………… 10

       2. The FAC shows a Consistent Cohesive Trade Dress ……………………….  11

       3. The Combination of Factors That Describe The COOGI Trade Dress is not Functionally and Aesthetically Driven………………………………… 11

       4. The FAC Clearly Alleges Both Secondary Meaning and Consistent Use...……13

       5. The FAC Clearly Alleges Facts Showing That Consumers Associate the COOGI Trade Dress with COOGI…..…………………………………….. 13

       6. The FAC Shows Uniform, Continuous Use………………………………..  15

       7. The FAC's Media References Establish Secondary Meaning………………… 15

8.  The FAC Clearly Alleges Confusion and Secondary Meaning......................... 15

    (a)  Strength of the Mark.......................................................... 16

    (b)  Similarity of the Marks....................................................... 16

    (c)  Proximity of the Products and Their Competitiveness With One
        Another......................................................................... 17

    (d)  Bridging the Gap.............................................................. 18

        Evidence of Actual Consumer Confusion................................ 18

    (e)  Evidence that the Imitative Mark was Adopted in Bad Faith........... 19

    (f)  Respective Quality of the Products........................................ 20

    (g)  Sophistication of Consumers in the Relevant Market.................... 20

C.  Plaintiff's Remaining Claims ....................................................... 20

  1.  The Remaining Statutory and Derivative Claims Do Not Fail as a
    Matter of Law ..................................................................... 20

    (a)  COOGI's False Endorsement Claim is a Viable Claim Under
        Section 43(a) of the Lanham Act.......................................... 20

    (b)  COOGI's Dilution Claim is Viable and Alleges Both Fame and
        Distinctiveness ............................................................... 21

    (c)  COOGI's Common Law Unfair Competition Claim is Viable and
        Alleges Bad Faith ........................................................... 21

    (d)  Plaintiff Has Stated a Viable Claim Under N.Y. Gen. Bus. Law
        § 360-L .................................................................... 22

D.  The FAC Complies With the Pleading Requirements of Rule 8 of the Federal Rules of
    Civil Procedure...................................................................... 23

  1.  The FAC and Rule 8 Fed.R.Civ.P.............................................. 23

  2.  Defendants' Legal Authority is Inapposite..................................... 25

V.  **CONCLUSION**.................................................................... 26

# TABLE OF
# AUTHORITIES

**Page(s)**

**Cases**

*Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-5449 (NSR), 2015 WL 7758894
 (S.D.N.Y. Dec. 1, 2015)……………………………………………………………………….. 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………………………… 5

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)…………………………... 25, 26

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS,
2009 U.S. Dist. LEXIS 2667, 2009 WL 55178, (N.D. Cal. Jan. 7, 2009)……………………. 12

*Beastie Boys v. Monster Energy Co.*
66 F. Supp. 3d 424, 448 (S.D.N.Y. 2014)…………………………….…………………….. 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 5

*Boarding Sch. Review, LLC  v. Delta Career Educ. Corp.*,
No. 11 Civ. 8921 (DAB), 2013 U.S. Dist. LEXIS 48513
(E.D.N.Y. Mar. 29, 2013) …………………………………………………...……….. 5

*Boisson v. Banian*, Ltd, 273 F.3d 262, 270 (2d Cir. 2001)……………..…………………... 6, 8

*Bongo Apparel, Inc. v. Iconix Brand Grp., Inc.*
856 N.Y.S.2d 22 (Sup. Ct. N.Y. Cnty. 2008) ……………………………………….. 21,  22

*Bonilla v. H&M Hennes & Mauritz L.P.*
2014 U.S. Dist. LEXIS 197579 (S.D.N.Y. April 16, 2014)…………………………….…… 21

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*,
696 F.3d 206 (2d Cir. 2012)……………………………………………………………......... 13

*Concannon v. Lego Sys*, 2023 U.S. Dist. LEXIS 43329
 (D. Conn. March 15, 2023).................................................................... 10, 11, 13, 14, 19

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018)……………………………………………………. 24

*Deckers Outdoor Corp. v. Next Step Grp., Inc.*, 2024 U.S. Dist. LEXIS 127987
(S.D.N.Y. July 18. 2024)……………………………………………………………..12, 19

*Diamond Collection, LLC v. Underwraps Costume Corp.*
2019 U.S. Dist. LEXIS 11737 (E.D.N.Y. January 22, 2019)…………………………..…… 20

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, (2d. Cir. 2010) ................................................. 5

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007)………...……… 23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358, 111 S. Ct. 1282,
113 L. Ed. 2d 358 (1991))……………………………………………………………………….. 6

*Geigtech E. Bay, LLC v. Lutron Elecs Co.*
352 F. Supp. 3d  265, 285 (S.D.N.Y. 2018)………………….…………………...… 12, 13, 15, 18

*Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92 (2d Cir. 1999)………………………….……………. 6

*Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, 2011 U.S. Dist. LEXIS 147102
(S.D.N.Y. December 22, 2011), aff'd 507 F. App'x 74 (2d Cir. 2013………………………..... 15

*Holland v. JP Morgan Chase Bank, N.A.*, 2019 U.S. Dist. LEXIS 146553
(S.D.N.Y. Aug. 28, 2019)……………………………………………………...……………  24

*Hudak v. Berkley Group., Inc.*, No. 13-CV-89, 2014 U.S. Dist. LEXIS 8168
2014 WL 354676 (D.Conn. Jan. 23, 2014)…………………………………………………….. 24

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007................................................................................... 5

*Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996 (2d Cir. 1995)………………….…………. 6, 7, 8

*New York Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC*
293 F.3d 550 (2d Cir. 2002)…………………………………………………………….......... 22

*Ochre LLC v. Rockwell Architecture Planning & Design P.C.*, No. 12-CV-2837,  2012 U.S.
Dist. LEXIS 172208 (S.D.N.Y Dec. 3, 2012), aff'd 530 F. App'x 19 (2d Cir. 2013……..…… 26

*Patsy's Italian Rest., Inc. v. Banas,* 575 F. Supp. 2d 427 (E.D.N.Y. 2008),
aff'd 658 F.3d 254 (2d Cir. 2011)…............................................................................................. 5

*Peter F. Gaito Architecture, LLC  v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010)…….. 2, 6, 9

*Polaroid Corp. v. Polarad Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961…………………………………………………………. 16, 17, 18, 20

*Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211 (2d Cir. 2003)…………………. 23

*Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389 (2d Cir. 2003)……………….. 10

*TraFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001)…………………………… 12

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127
(2d Cir. 2003)…………………………………………………………………………….… 3, 6

*Walt Disney Co. v. Goodtimes Home Video Corp.,* 830 F. Supp. 762, (S.D.N.Y. 1993)…….... 11

*Wonderful Co. LLC v. Nut Cravings Inc.,* 2025 U.S. App. LEXIS 1012 (2d Cir. January 16,
2025)……………………………………………………………………………………………. 16

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004)……………....……………………………. 23

**Statutes**

Lanham Act § 43(a), 15 U.S.C.  § 1125(a)..................................................................................... 20

§ 360-L New York General Business Law…………………………………………………….... 22

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................. 5, 23, 24, 25, 26

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1

Fed. R. Evid. 201 .................................................................................................................. 5

Local Rules for the Second Circuit (2d Cir. R. 32.1.1(a), (b)(2)) ……………………………… 25

## PRELIMINARY STATEMENT

This action was brought because of Defendants' unlawful infringement of Plaintiff COOGI Partners, LLC's (alternatively, "COOGI" or "Plaintiff") highly recognizable sweater design for the COOGI Rag & Bone Sweater, which COOGI promoted, sold and distributed beginning in 2014.[1] The design of the COOGI Rag & Bone sweater ("Rag & Bone Design") is protected by copyright and as trade dress. COOGI respectfully submits this Memorandum in Opposition to Defendants' Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all six claims in COOGI's First Amended Complaint ("FAC").

Defendants present arguments with respect to Plaintiff's First and Second Claims and contend, wrongly, that all of the Plaintiff's other claims are dependent on the same factors as Plaintiff's Second Claim relating to trade dress and must be dismissed if that claim is dismissed. Defendants overlook that COOGI's Third, Fourth, Fifth and Sixth Claims go beyond trade dress infringement in alleging additional misconduct aimed at causing customers to believe that merchandise sold by Defendants is either COOGI merchandise or is approved, licensed or endorsed by COOGI.

## I.    INTRODUCTION

With respect to COOGI's copyright claim, Defendants claim that COOGI is trying to monopolize a style or aesthetic, but that is clearly not the case. COOGI is merely trying to protect its copyright in the Rag & Bone Design, which has been infringed by the Defendants, and its trade dress developed and marketed to consumers over many years. As such the Court should deny Defendant's motion to dismiss the case.

---

[1] When referring collectively to all three defendants, the FAC employs the abbreviation of "Defendants." When referring collectively to just the two Louis Vuitton corporate defendants, the FAC uses the abbreviated form, "LV Defendants."

COOGI's trade dress is defined in FAC, Paragraph 20 as "(i) a central section that covers the torso and contains highly colorful individual vertical cables and ornamented sections consisting of multiple colors and intricate designs; (ii) sleeves showing horizontally the same colors and intricate designs; and (iii) a raised knit that appears three dimensional." This trade dress has been used consistently over a vast majority of COOGI's sweaters over many years and while each sweater may have different colors and intricate designs, all fall within the definition of the COOGI trade dress. COOGI does not claim the equivalent to owning "impressionism," it merely claims that its "paintings" can't be infringed.

Plaintiff has provided side-by-side photos of the copyrighted Rag & Bone sweater and each of the Defendants' Offending Goods that infringe that design. Defendants argue that by changing colors, adding some of Defendant's trademarks and making slight adjustments to the location of specific characteristics of the Rag & Bone sweater, they avoid infringement of COOGI's copyright. That is simply not the case. Furthermore, while the motion to dismiss was granted, in the cited case of *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010), the designs of the Offending Goods in this case are not "plainly dissimilar" and are, in fact, substantially similar.

Plaintiff has also refuted Defendants' group pleading claims in subsection IV. D. below.

## II.    STATEMENT OF FACTS

**A.**    Plaintiff does not dispute the description of this case as set forth in the first two paragraphs of the Statement of Facts set forth in Defendants' Memorandum of Law ("Defs.' Mem."). However, that is where the agreement between the parties ends. This action is based on what COOGI maintains is Defendants' unlawful use of the designs shown on the Offending Goods as described in the FAC.

**B.**      Defendants have accentuated their infringement and have sought to cause consumer confusion as to the origin, sponsorship and /or endorsement of the design of the Offending Goods, by connecting or tying such design to COOGI by describing such designs as either "an homage to early 2000s street style" or as "inspired by early 2000s street style." (FAC, ¶ 41)

**C.**      Defendants seek to undercut COOGI's copyright claim by asserting that there is no substantial similarity between COOGI's Rag & Bone Design and the design of the Offending Goods, and that COOGI has admitted as much by illustrating the specific aspects of its design that have been copied on the Offending Goods.  However, the test of "substantial similarity" is based on the comparison of "the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003).  While COOGI has broken down in the FAC the actual design aspects or design techniques that show the substantial similarity between the COOGI Rag & Bone Design and  the design of the Offending Goods, the overall design of the Offending Goods is substantially similar to the COOGI Rag & Bone Design as can be seen from the various photographs shown in Exhibit A to the FAC and in the FAC itself.  Both the Rag & Bone Design and the Offending Goods show extensive use of checkerboard ropes and sections and solid lines or welts to separate sections of both the respective designs.  The Defendants have also copied the branding technique or aspect by including the Vuitton name in an oval in the same manner as COOGI included the Rag & Bone name in an oval.  It is absolutely clear from the FAC that COOGI's original combination of creative designs and choices were copied by the Defendants resulting in the substantially similar design of the Offending Goods.

**D.**      With respect to its trade dress claims, COOGI has plead that its trade dress is not functional "because (a) there have been and continue to be numerous other brands of sweaters and

3

clothing in the marketplace that incorporate bright colors and ornamental designs, (b) the COOGI Trade Dress design does not provide a cost or quality advantage in the market for sweaters and, actually results in increased costs to COOGI to create the COOGI Trade Dress, and (c) competitors' ability to compete is not significantly undermined by protecting the COOGI Trade Dress because other colorful and ornamental designs exist and are still used throughout the clothing industry." (FAC, ¶ 63)  While the COOGI trade dress, and most trade dress for that matter, is designed to be aesthetically appealing, COOGI's extensive and exclusive use of the COOGI Trade Dress for more than 35 years, has caused such Trade Dress to be recognized as emanating from COOGI.  Furthermore, while various third party publications have not broken down and described the COOGI Trade Dress in exactly the same manner as COOGI has in the FAC, they have recognized the COOGI Trade Dress in various quotes such as the following:

> "Renowned for their creative and vibrant aesthetics. These iconic sweaters emerged as cultural symbols in the 1980s and 1990s." (FAC, Exhibit H, Document 48-11, Page 15 of 50)

> "Biggie [the rapper Biggie Smalls], donning these kaleidoscopic knits in music videos, performances, and public appearances not only showcased his unique style but also transformed these sweaters into iconic symbols within hip-hop culture." (FAC, Exhibit H, Document 48-11, Page 17 of 50)

> "The colorful kaleidoscope prints on a Coogi sweater express everything that was fun and aspirational about hip hop culture during that time period [the 90s]." (FAC, Exhibit H, Document 48-11, Page 37 of 50)

The Defendants have acknowledged (i) their copying of COOGI's copyrighted design and Trade Dress and (ii) COOGI's secondary meaning and telegraphed their awareness of COOGI's symbolic representation of 90s streetwear and urban culture by describing the Offending Goods on the LV Defendants' web site as either "an homage to early 2000s street style" or as "inspired by early 2000s street style." (FAC, ¶ 41)

4

### III.    LEGAL STANDARD

Under the so-called *Twombly* standard, Plaintiff's allegations are to be accepted as true, and are not subject to dismissal for failure to state a claim, so long as entitlement to requested relief is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility" is contextual, obligating a plaintiff "to amplify a claim with some factual allegations" where "such amplification is needed." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub nom. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In deciding a motion to dismiss, a District Court must consider the contents of the pleading in question, including the materials attached to it as exhibits or otherwise incorporated by reference. E.g., *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court has the discretion and it is generally proper to take judicial notice of articles and web sites on the Internet which are reliable for the purpose they are offered. *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, 11 Civ. 8921 (DAB), 2013 U. S. Dist. LEXIS 48513 at 2, n.1 (S.D.N.Y. Mar. 29, 2013) (dismissal motion involving trademark and copyright claims); and *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp.2d 427, 443-n.18 (E.D.N.Y. 2008), aff'd. 658 F.3d 254 (2d Cir. 2011). See also, Rule 201 of the Federal Rules of Evidence, which permits judicial notice of material in the public domain at any stage of a judicial proceeding. Defendants also contend that Plaintiff's FAC impermissibly "lumps together" the conduct of all three Defendants, thereby failing to provide each Defendant with a separate "short and plain statement" of the claims pursuant to Rule 8 Fed.R.Civ.P. *See* Defs.' Mem. at 28-30. Defendants' argument is wrong for several reasons, all of which are discussed in subsection IV.D. below.

## IV.    ARGUMENT

## A.    Copyright Infringement

Plaintiff agrees with Defendants' statement that a copyright infringement claim has two requirements: (1) ownership of a valid copyright and (2) copying of protectable elements of the work and that the infringing work has to be found to be substantially similar to the copyrighted work using the ordinary observer test. However, that is where the agreement ends.

Defendants' rely heavily on the case of *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010). However, while the Court in that case did not find any substantial similarity between the two sets of architectural plans, the factual aspects of that case were significantly different than the current case and the Court in that case very clearly set forth the manner in which substantial similarity should be determined.

> [W]e are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 133 (2d Cir. 2003); see Boisson, 273 F.3d at 272; Knitwaves Inc., 71 F.3d at 1003, as instructed by our "good eyes and common sense," Hamil Am., 193 F.3d at 102 (alteration omitted). This is so because "the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art – the excerpting, modifying, and arranging of [unprotectible components] . . . – are considered in relation to one another." Tufenkian Import/Export Ventures, Inc., 338 F.3d at 134. Thus, in the end, our inquiry [***1361] necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Knitwaves Inc., 71 F.3d at 1004 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 358, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)). *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66.

The Defendants essentially make five arguments against Plaintiff's claims of copyright infringement by the Defendants:

  i.  The Works Express Entirely Different Artistic Concepts and Overall Aesthetic Impressions.
  ii.  COOGI Admits the Defendants Did Not Copy Its Design
  iii. COOGI's Claims Do Not Pass the Ordinary Observer or More Discerning Tests.

iv. Any Alleged Access Does Not Establish Infringement
v. The Works Are So Dissimilar That Dismissal Is Required

However, as shown below, Defendants' defenses to the copyright claims are without basis or merit and, in any event, are unsuccessful in seeking to assert that the copyright claims are not sufficiently pleaded.

**1.    Defendants Have Copied COOGI's Artistic Concepts and Overall Aesthetic Impressions.**

As explained in the Introduction above, in the FAC COOGI has broken down the individual aspects of its design that have been copied by the Defendants but in the end, individual aspects or design choices do not matter so much as the overall look of the COOGI design and the Offending Goods design and whether they are "substantially similar." Defendants' argument that substantial similarity does not exist due to alleged differences in color, fabric, texture, knitting techniques, and artistic comments regarding chaos, repetition, balance, and symmetry and free-form expression is entirely irrelevant and also without merit.

**2.    Defendants' Allegation That COOGI Has Admitted That Defendants Did Not Copy COOGI's Design Is Without Any Basis.**

Defendants argue that they have merely rearranged unprotectible techniques. While COOGI describes aspects of its original designs as techniques, the fact is that they are specific design concepts developed by COOGI that are in fact protectible and have been copied by the Defendants. It is a common argument of infringers that they have altered designs in a manner sufficient to avoid "substantial similarity" See *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir. 1995). Defendants have engaged in similar design altering conduct here but have failed to avoid substantial similarity.

**3.    COOGI's Copyright Claim Meets The Ordinary Observer Test and, While Not Applicable in this Instance, Also Meets the More Discerning Test.**

COOGI has designed its Rag & Bone sweater without reference to materials in the public

domain. Defendants appear to argue that merely because COOGI has used certain design concepts in designing its sweaters and merely because its manufacturers have used certain knitting techniques that are available to all sweater manufacturers, that the Rag & Bone sweater has no protectible elements.  However, Defendants' position is not sustainable and Defendants' attempt to argue for application of the "more discerning" test is without basis.  In the *Boisson* case, the plaintiff had incorporated letters from the alphabet in her quilts and those were clearly in the public domain and, as such plaintiff's work was not "wholly original." *Boisson v. Banian*, Ltd, 273 F.3d 262, 270 (2d Cir. 2001) As the Second Circuit stated in *Knitwaves*, "if we took this argument to its logical conclusion, we might have to decide that 'there can be no originality in a painting because all colors of paint have been used somewhere in the past.'" *Knitwaves* at 1003

### 4.    At the Very Least Plaintiff Has Alleged Clear Indirect Evidence of Access.

While access alone does not establish copyright infringement, direct or indirect access combined with substantial similarity does support an inference that copying took place. *Boisson*, 273 F.3d at 269.  Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work. *Boisson*, 273 F.3d at 270.  In this case COOGI sweater designs are widely disseminated and are well known among consumers and aficionados of streetwear, and the LV Defendants on their web site have clearly stated that the Offending Goods are either "an homage to early 2000s street style" or are "inspired by early 2000s street style." (FAC, ¶ 41).  COOGI's sweaters are the only streetwear that meet such description.  In addition, there were numerous reports that the Defendant Pharrell Williams collaborated with designer and BAPE founder Tomoaki Nagao (a/k/a Nigo) on the line shown at the Louis Vuitton January 2025 menswear fashion show and as reported in GQ on January 22, 2025, "there was nothing … overly retro about Coogi-style knits based on pieces

from Nigo's museum-quality personal clothing archive." (FAC, Exhibit K – Part 2, Document 48-16, page 6). All of the foregoing is clear evidence of at least indirect access on the part of the Defendants.

### 5.    The Works are Substantially Similar.

The design of the Offending Goods is clearly substantially similar to that of the COOGI Rag & Bone Design. However, the determination of whether or not the Offending Goods are substantially similar and whether the copyright claims should be dismissed is not based on statements by either the Plaintiff or the Defendants but based on the Court's review of the respective works. "Thus, where, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Peter F. Gaito Architecture, LLC*, 602 F.3d at 64. In addition, Defendants seem to assert that the use of their trademarks on the Offending Goods eliminates copyright infringement. Defendants' claim is without merit and the presence of any such trademarks should not affect the Court's determination. Defendants offer no basis or authority for their argument that use of their trademarks on a copyrighted design eliminates substantial similarity and adoption of such a theory would destroy most copyright claims. Adding a trademark to a copyrighted design should not be deemed to avoid copyright infringement, since trademarks and copyrights protect different aspects of intellectual property. Clearly, copyright protects the creative aspects of a work, while trademark protects branding elements. If a design is substantially similar to a copyrighted work, simply adding one or more trademarks should not shield the infringing work from copyright claims.

### B.    Trade Dress Infringement

### 1.    The FAC Identifies a Specific, Nonfunctional Combination of Elements Capable of Protection

Defendants seem to argue that COOGI has not articulated the specific elements of the COOGI Trade Dress.  However, that is simply not the case.  As set forth in FAC, Paragraph 20 and repeated on pages 1 - 2 above, COOGI's description of the COOGI Trade Dress is, for example, much more detailed and specific than the description enunciated by the plaintiff and its counsel in *Concannon v. Lego Sys*, 2023 U.S. Dist. LEXIS 43329 (D. Conn. March 15, 2023): "(1) short provocative phrases; (2) satirical commentary on punk rock and mainstream pop culture; (3) hand painted graffiti style lettering." *Concannon v. Lego Sys*, 2023 U.S. Dist. LEXIS 43329 at *42.  In the *Concannon* case, the plaintiff was represented by counsel for the Defendants in this case, and the Court held that the plaintiff had sufficiently defined the trade dress and denied the motion to dismiss.  The Court in that case distinguished plaintiff's definition of its trade dress from that in *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389 (2d Cir. 2003) and similar cases because (i) the level of detail distinguished plaintiff's definition from ones like *Sherwood 48 Associates*, where the court found that describing the trade dress as "the unique configuration and ornamentation of One Times Square, Two Times Square and 1600 Broadway and the advertising and signage display on One Times Square, Two Times Square and 1600 Broadway" was inadequate because it failed to identify "the specific elements that comprise each building's identifiable trade dress." (*Sherwood 48 Assocs.* 76 Fed. Appx. at 391) and (ii) plaintiff's definition allowed the Court to determine by visual inspection whether each item of clothing falls within the proposed definition. *Concannon v. Lego Sys*, 2023 U.S. Dist. LEXIS 43329 at *42-43.  COOGI's definition of the COOGI Trade Dress is similarly sufficient and enables the Court to determine by visual inspection that COOGI's Rag & Bone sweater, as well as other COOGI designs attached to

the FAC, and the Offending Goods all fall within COOGI's definition of the COOGI Trade Dress.

**2.      The FAC shows a Consistent Cohesive Trade Dress.**

The Defendants also argue that there is no consistency across the various designs that

COOGI has attached in FAC Exhibits C, D and E.  That is simply not the case.  All of the designs

shown in those Exhibits fit within the COOGI Trade Dress description: "(i) a central section that

covers the torso and contains highly colorful individual vertical cables and ornamented sections

consisting of multiple colors and intricate designs; (ii) sleeves showing horizontally the same

colors and intricate designs; and (iii) a raised knit that appears three dimensional."  Furthermore,

while the sweaters in question show the COOGI Trade Dress, they are not identical but do highlight

the distinctive elements of COOGI's sweater designs.  As such, it seems that Defendants' reliance

on *Walt Disney Co. v. Goodtimes Home Video Corp.,* 830 F. Supp. 762, (S.D.N.Y. 1993) for

purposes of its motion to dismiss is without any reasonable basis, As the Court in *Concannon*

found:

> There are admittedly some similarities between Plaintiff's trade dress arguments
> and those made in Walt Disney. However, the court in Walt Disney made its
> determination that the differences in packaging outweighed any consistent elements
> of the proposed trade dress after "observing the demeanor of the witnesses on direct
> and cross-examination, and weighing the evidence, particularly after viewing" the
> packages during the bench trial. 830 F. Supp. at 768. Here, on the other hand, the
> Court is evaluating only the handful of Concannon works that are included in the
> TAC, all of which demonstrate a consistent "overall look" and fall within the
> parameters Plaintiff has defined. (See TAC ¶ 19-20.) At this stage, the Court
> accepts the assertion that the variations in the non-trade dress elements of his
> product line "highlight" the distinctive elements rather than overshadow them as in
> Disney and leave an evaluation of whether consumers would feel the same for
> expert opinion and factual resolution at a later stage. *Concannon v. Lego Sys*, 2023
> U.S. Dist. LEXIS 43329 at *42.

**3.      The Combination of Factors That Describe The COOGI Trade Dress is not
Functionally and Aesthetically Driven**

In several sections of their Memorandum, Defendants seek to argue that COOGI's Trade

Dress is functionally and aesthetically driven.  COOGI has clearly refuted these arguments in section II. D. above.  Furthermore, while the Plaintiff ultimately has the burden of showing non-functionality, because functionality is a question of fact, "it is often premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage." *GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 278 (S.D.N.Y. 2018)*; *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc., No. C 08-3931 RS, 2009 U.S. Dist. LEXIS 2667, 2009 WL 55178, at \*3 (N.D. Cal. Jan. 7, 2009)* (The 'inquiry into whether a product is functional . . . is fact intensive with multiple factors for the Court to consider,' and 'facts going to that functionality analysis cannot be resolved at the motion to dismiss stage but must await summary judgment or trial.')." *Deckers Outdoor Corp. v. Next Step Grp., Inc.,* 2024 U.S. Dist. LEXIS 127987 at \*9 (S.D.N.Y. July 18. 2024)

The Defendants also argue that COOGI seeks to monopolize elements that make its garments visually appealing to consumers—vibrant color and textured knitting.  However, that is not the case.  COOGI merely seeks protection for its unique combination of various elements, not the individual elements themselves.  The COOGI Trade Dress for which protection is sought is the combination of "(i) a central section that covers the torso and contains highly colorful individual vertical cables and ornamented sections consisting of multiple colors and intricate designs; (ii) sleeves showing horizontally the same colors and intricate designs; and (iii) a raised knit that appears three dimensional."   Unlike the facts in *TraFix Devices, Inc. v. Mktg. Displays, Inc.*, none of these elements either individually or in combination are "essential to the use or purpose of the [article] or when it affects the cost or quality." *TraFix Devices, Inc. v. Mktg. Displays, Inc.*,532 U.S. 23, 32 (2001).

4.    **The FAC Clearly Alleges Both Secondary Meaning and Consistent Use**

Defendants' assert that the FAC does not allege secondary meaning or consistent use. However, there is no basis for that claim. FAC, Paragraph 19 specifically states that the COOGI Trade Dress has achieved secondary meaning as a result of extensive sales and promotion since at least 1987, a period of more than 35 years, and as a result of being worn by celebrities, being publicized in various third-party publications, being used by artists in artwork they have created, and being referred to in various musical recordings. The Second Circuit has clearly identified the following factors as relevant in determining secondary meaning "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc., 696 F.3d 206, 216 (2d Cir. 2012)*. With the exception of consumer studies, COOGI has alleged and provided evidence of all of the foregoing factors in FAC, Paragraphs 19, 32, 34, 38 and 61, as well as Exhibits F, H, I, and K to the FAC. "None of these elements is determinative and not every one of them must be proved to make a showing of secondary meaning." *GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 282 (S.D.N.Y. 2018)*. The *GeigTech* court also stated that "none of these factors is generally amenable to determination on a motion to dismiss." Id. at 282

5.    **The FAC Clearly Alleges Facts Showing That Consumers Associate the COOGI Trade Dress with COOGI**

The arguments being made by Defendants' counsel in this case are diametrically opposed to those such counsel made in the case of *Concannon v. Lego Sys*, 2023 U.S. Dist. LEXIS 43329 (D. Conn. March 15, 2023), in which Defendant's counsel represented the plaintiff and in which the Court denied the motion to dismiss even though the defendants in that case made very similar arguments to those being made by Defendants in this case. For example, the Court in *Concannon*

found that even though the plaintiff there did not have any consumer surveys and, contrary to COOGI's allegations in this case, did not show any advertising expenditures, the plaintiff's goods had, "been exhibited in galleries and featured on film and television and in magazines and art publications," and had received "unsolicited media attention via photographs of celebrities 'wearing and promoting' Concannon products, " often "specifically identify[ing] [Plaintiff] as the source of those Products, on social media and in interviews." (2023 U.S. Dist. LEXIS 43329 at 48-49). In this case, just as the plaintiff did in *Concannon*, COOGI has shown that its goods have been the subject of numerous unsolicited third party publications, have been incorporated in artwork and displayed in museums and art galleries/shows, have been worn by celebrities and have been featured in film and television, all of which have identified the designs and goods as emanating from COOGI. Contrary to the statements in Defs.' Mem., as set forth above, the FAC contains clear allegations of sales volume, advertising expenditures, and deliberate brand promotion connecting the COOGI Trade Dress. The Defendants seem to be asserting that COOGI's long history of sales, advertising, unsolicited publicity and celebrity use is not relevant unless each such element shows a specific connection to the COOGI Trade Dress as defined in the FAC. That seems ludicrous. Trade dress is not generally advertised or promoted as having specific attributes, rather over time consumers recognize trade dress as a result of such trade dress being displayed in such sales, advertising, social media, unsolicited publicity and celebrity use. In *Concannon*, Defendants' counsel in this case made the same arguments on behalf of the *Concannon* plaintiff that COOGI is making here, even though the *Concannon* plaintiff had little or no advertising and nowhere near the long history of sales, advertising, publicity, social media and popularity that the COOGI Trade Dress has had and was only relying on its online presence, publicity, social media and popularity with celebrities. (2023 U.S. Dist. LEXIS 43329 at *47).

14

Again, the only factor that COOGI does not possess is consumer surveys.

### 6.    The FAC Shows Uniform, Continuous Use

Defendants assert that differences in various COOGI sweaters show that there is no uniform continuous use.  However, this is merely repetitious of Defendants' claims which are dealt with in subparagraph B.2. above.

### 7.    The FAC's Media References Establish Secondary Meaning

While media references by themselves may establish secondary meaning.  COOGI has alleged not only publicity but evidence of secondary meaning more than sufficient to meet the Second Circuit's non-exclusive six factor test to establish secondary meaning.  In point of fact, the Court in *Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, 2011 U.S. Dist. LEXIS 147102 * (S.D.N.Y. December 22, 2011), aff'd 507 F. App'x 74 (2d Cir. 2013), found that, unlike the factual situation in this case, nothing in the publicity and other items submitted by the *Heptagon* plaintiff related to the trade dress being asserted by such plaintiff. *Heptagon Creations, Ltd.* 2011 U.S. Dist. LEXIS 147102 at 22*  In addition, as discussed on page 4 above, the publicity included by COOGI in its Exhibits to the FAC, as well as substantial other unsolicited third party publicity, specifically refers to the designs which comprise the COOGI Trade Dress and some even shows the Rag & Bone Design.

### 8.    The FAC Clearly Alleges Confusion and Secondary Meaning

Defendants argue that the FAC does not allege confusion and secondary meaning. However, once again, the Defendants ignore that the FAC in Paragraphs 49, 50, 62 and 67 alleges likelihood of confusion and the similarities between the Offending Goods and the COOGI trade dress.  Statements such as those in the aforementioned Paragraphs were found by the *GeigTech* court to be sufficient for purposes of alleging confusion. *GeigTech E. Bay LLC, 352 F. Supp. 3d*

*at 285-286.*

In determining whether there is a likelihood of confusion, Courts in the Second Circuit generally rely on an analysis of the eight "Polaroid factors" promulgated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Those factors are as follows: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Wonderful Co. LLC v. Nut Cravings Inc.*, 2025 U.S. App. LEXIS 1012 at *4-5 (2d Cir. January 16, 2025) (internal citations omitted).

(a)    <u>Strength of the Mark</u>.  The COOGI Trade Dress has become strong and has achieved secondary meaning as a result of COOGI's extensive and exclusive use of the COOGI Trade Dress for more than 35 years, and, as such, the COOGI Trade Dress is recognized by consumers as emanating from COOGI.  This results from COOGI Trade Dress' long history of sales, advertising, unsolicited publicity, use by artists in creating artwork and celebrity use.  It is also evidenced by the numerous unaffiliated, third-party publications and commentators on social media who immediately recognized the connection of the Offending Goods to COOGI as soon as they were displayed at the LV Defendants' fashion show.

(b)    <u>Similarity of the Marks</u>.  The overall appearance of the Offending Goods is confusingly similar to the COOGI Trade Dress. As COOGI has demonstrated throughout this Memorandum, the trade dress of the Offending Goods is clearly substantially similar to that of the COOGI Trade Dress and the COOGI Rag & Bone sweater in particular.  Again, that similarity is

specifically evidenced by all of the publicity and commentary identifying the connection as soon as the Offending Goods were displayed at the LV Defendants' fashion show.

(c)     Proximity of the Products and Their Competitiveness With One Another.

There is no question regarding the proximity of the Offending Goods and the COOGI Trade Dress Products. Most of the Offending Goods are sweaters, they also include a vest and a polo shirt, which are clearly also apparel items. Defendants argue that the respective goods are not competitive because their products are three time more expensive than COOGI's sweaters. However, pricing is not determinative, especially where aspirational consumers purchase products from both COOGI and the LV Defendants.

With respect to proximity of the goods and competitiveness (as well as the other *Polaroid* factor relating to bridging the gap), it should also be noted that, while COOGI may be known for street wear, there is ample evidence that COOGI sweaters are deemed to be a luxury item. (See FAC, Exhibit H, Document 48-11 pages 3 of 50 and 5 of 50 and Exhibit K, Document 48-15, page 6 of 13). Even if the Court was to accept Defendants' argument that COOGI is not veering into the luxury market, it is clear that the LV Defendants are seeking to veer into the streetwear market, even if they are trying to do so at price points at least three times the COOGI approximately $600 price points. (Defs.' Mem. at 25). As set forth in FAC, Paragraph 42 "the Defendants have engaged in a pattern of conduct intended to blur the line between the LV Defendants' luxury products and the streetwear products for which COOGI is famous." The LV Defendants have also engaged in various streetwear/skate collaborations, including, most notably, with "pioneering streetwear designer NIGO" both in 2020 under their prior creative director and currently for the Offending Goods. (See FAC, Exhibit K, Document 48-13, pages 6 of 13 and 8 of 13). As set forth in FAC, Paragraph 39, COOGI has done numerous collaborations with other brands, some of which might

be deemed luxury brands. As such there is no basis for Defendants' argument that their product could not be deemed to be confused with those of COOGI or that any such confusion would be obviated by the fact that consumers are sophisticated.

The Offending Goods and the COOGI products clearly compete with each other despite somewhat different channels of trade and price points. Defendants' argument that the respective products occupy different market channels and price points is nothing more than a variation on their argument that there is no possibility of likelihood of confusion because they are in the luxury market. As discussed above, COOGI's price points are approximately $600 and COOGI sweaters are often referred to as luxury items.

The court in *GeigTech* also recognized that the proximity of the products (in this case, sweaters and related apparel in both instances) is sufficiently close to create a likelihood of confusion. The *GeigTech* court went on to state that "[t]he remaining [Polaroid] factors require a fact-intensive inquiry not suitable for a motion to dismiss." Nevertheless, a very preliminary analysis of those factors is set forth below. *GeigTech E. Bay LLC, 352 F. Supp. 3d at 285*

(d)     Bridging the Gap. As discussed above, due to the Defendants' attempts to veer into street wear and skate, it seems clear that there really is no gap between the Offending Goods and COOGI's products embodying the COOGI Trade Dress.

(e)     Evidence of Actual Consumer Confusion. The LV Defendants also claim that there are no allegations of actual confusion. However, while the Plaintiff has alleged in FAC, Paragraph 40 and FAC, Exhibit K that there is and was actual confusion as a result of the statements of numerous unaffiliated, third-party publications and commentators on social media, actual confusion of consumers is hard to find at this early stage due to the fact that, as far as Plaintiff can determine, the LV Defendants only began to offer the Offending Goods for sale

sometime after July 1, 2025. In addition, "this factor is not well suited for resolution on a motion to dismiss, as actual confusion is difficult to demonstrate without the benefit of further factual development on actual consumer reactions, and so will be given limited weight." *Concannon v. Lego Sys*, 2023 U.S. Dist. LEXIS 43329 at *57-58.

(f)    Evidence that the Imitative Mark was Adopted in Bad Faith. Contrary to Defendants assertion that the FAC is silent on intent, FAC, Paragraph  50 states that the "acts of Defendants are willful and intentional, in that Defendants either knew that said Offending Goods bore unauthorized reproductions, copies or colorable imitations of the COOGI Trade Dress, the COOGI Copyright or other COOGI designs, or willfully ignored such facts, and have been done in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said articles of apparel products and to gain for Defendants the benefit of the enormous goodwill associated with the COOGI Trade Dress."  FAC, Paragraph 72 also alleges intent and obvious similarities between the Defendants' Offending Goods design and the COOGI Trade Dress.

The Defendants cite two Oregon cases, but no Second Circuit case law, for the proposition that inclusion of the LV Defendants' trademarks on the Offending Goods means that bad faith and intent to confuse cannot be inferred.  In fact, Second Circuit cases seem to find the opposite.  For example, in a case involving trade dress of UGG footwear, the alleged infringer argued that its use of its registered trademark "CUSHIONAIRE" on the allegedly infringing goods obviated any confusion.  However, the Court rejected that argument, stating that "as with challenges to trademark registration before the PTO, the use of a house mark in conjunction with a product mark does not prevent a finding of likelihood of confusion." *Deckers Outdoor Corp. v. Next Step Grp., Inc.,* 2024 U.S. Dist. LEXIS 127987 at *16 (S.D.N.Y. July 18. 2024)

(g)    <u>Respective Quality of the Products</u>.  Both COOGI products and the LV Defendants' products are high quality, expensive products and this factor doesn't seem applicable in this case.

(h)    <u>Sophistication of Consumers in the Relevant Market</u>.  Consumers of both COOGI products and the LV Defendants' products appear to be sophisticated, However, both COOGI's and the LV Defendants collaborations with other brands, the numerous third party publications and commentators that connected the Offending Goods with COOGI and the LV Defendants' own actions in describing the Offending Goods as either "an homage to early 2000s street style" or as "inspired by early 2000s street style" militate against a finding that sophistication obviates confusion in this instance.

Based on all of the foregoing, it is clear that an analysis of the *Polaroid* factors does not favor dismissal of the FAC.

## C.    Plaintiff's Remaining Claims

### 1.    The Remaining Statutory and Derivative Claims Do Not Fail as a Matter of Law

(a) <u>COOGI's False Endorsement Claim is a Viable Claim Under Section 43(a) of the Lanham Act</u>.

In *Diamond Collection, LLC v. Underwraps Costume Corp.*, 2019 U.S. Dist. LEXIS 11737 (E.D.N.Y. January 22, 2019), even though the Court dismissed the counterclaimant's claims for trade dress, infringement, false designation of origin, unfair competition and trademark dilution, it found that the counterclaimant had plausibly stated a claim for false endorsement.  2019 U.S. Dist. LEXIS 11737, at *27.  Under case law in the Second Circuit, a plaintiff must prove that "the defendant, (1) made a false or misleading representation of fact; (2) in commerce; (3) in connection with goods or services; (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services."  *Beastie Boys v. Monster Energy Co.,* 66 F. Supp. 3d 424, 448 (S.D.N.Y. 2014).  Here, the Defendants' obvious use of COOGI's design and use of phrases

such as "an homage to early 2000s street style" or as "inspired by early 2000s street style" are likely to cause confusion among consumers regarding COOGI's endorsement of the Defendants' Offending Goods.

(b) <u>COOGI's Dilution Claim is Viable and Alleges Both Fame and Distinctiveness</u>.

Despite Defendants' arguments to the contrary, the dilution claim in the FAC is viable. FAC, Paragraph 71 clearly alleges that COOGI's sweaters and the COOGI Trade Dress are famous. Likewise, FAC, Paragraphs 19, 36 and 71 clearly set forth statements regarding COOGI's exclusive and continuous use of the COOGI Trade Dress. Defendants' claims regarding use of the LV Defendants' trademarks or branding are addressed and controverted in Section IV.B.7.(f) above.

(c) <u>COOGI's Common Law Unfair Competition Claim is Viable and Alleges Bad Faith.</u>

Defendants' assert that COOGI has failed to allege that Defendants acted in bad faith, which is a requisite element of COOGI's claim for unfair competition under State law. (Defs.' Mem., at 28). However, COOGI has clearly alleged bad faith by Defendants in FAC, Paragraph 76. Again, Defendants' claims regarding use of the LV Defendants' trademarks or branding are addressed and controverted in Section IV.B.7.(f) above.

Defendants' also assert that if COOGI's trade dress claim fails, COOGI's New York state law claim for unfair competition must also fail. However, while trade dress or trademark claims often are the sole bases of the corresponding State unfair competition claim, unfair competition is a much broader concept. "Thus, [w]hile there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures and labor of another." *Bonilla v. H&M Hennes & Mauritz L.P.*, 2014 U.S. Dist. LEXIS 197579 (S.D.N.Y. April 16, 2014), at *46 quoting *Bongo Apparel, Inc. v. Iconix Brand Grp., Inc.*, 856

N.Y.S.2d 22 (Sup. Ct. N.Y. Cnty. 2008). Here, in addition to the trade dress and trademark claims described above, COOGI has alleged that Defendants have used phrases such as "an homage to early 2000s street style" or as "inspired by early 2000s street style" for the purpose of confusing the public and, in essence, misappropriating the COOGI goodwill.

      (d)    Plaintiff Has Stated a Viable Claim Under N.Y. Gen. Bus. Law § 360-L.

A claim under § 360-L requires proof of (1) a distinctive mark or trade dress and (2) likelihood of dilution. Here, COOGI has plausibly alleged that its claimed trade dress is distinctive. Defendants falsely claim that COOGI's statement in FAC, Paragraph 19 that "While other colorful and ornamental sweaters have and continue to exist, the highly distinctive and ornamental designs of COOGI sweaters and apparel have become exceedingly famous  . . ." somehow undercuts any inference of dilution. In point of fact, while COOGI asserts that it has exclusively used the combination of elements that constitute the COOGI Trade Dress.  In this case, Defendants' actions constitute blurring under the New York statute. "Blurring occurs 'where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.' To determine the likelihood of blurring, we have looked to six factors, including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." (Internal citations omitted). *New York Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002). In addition, it should be noted that New York's dilution statute applies notwithstanding the absence of competition between the parties or the absence of confusion as to the source of the goods or services. *New York Stock Exch., Inc. at 557.*

    **D.**    **The FAC Complies With the Pleading Requirements of Rule 8 of the Federal Rules of Civil Procedure**

Defendants contend that Plaintiff's FAC impermissibly "lumps together" the conduct of all Defendants, thereby failing to provide each Defendant with a separate "short and plain statement" of the claims pursuant to Rule 8 Fed.R.Civ.P.. *See* Defs.' Mem. at 28-30. Defendants' argument is wrong for the several reasons set forth below.

    **1.**    **The FAC and Rule 8 Fed.R.Civ.P.**

Fairly read, the FAC complies with the liberal "notice pleading" concept of Rule 8 which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2)'s "short and plain statement" mandate should be interpreted in light of the overall purpose of the pleading rules, which is not to flesh out the nitty-gritty factual details of a case ---- that is why we have discovery[2]---- but to provide "fair notice" of the claims asserted. *See Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007) ("Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. <u>Specific facts are not necessary</u>; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (emphasis added; internal quotation marks and alterations omitted)).

"[F]air notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir 2004). Furthermore, it is well-settled in the Second Circuit that "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against

---

[2] "More extensive pleading of fact[s] is not required" under Rule 8 because the Federal Rules "provide other devices besides pleadings that will serve to define the facts and issues." *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (internal quotation marks omitted).

each defendant." *Holland v. JP Morgan Chase Bank, N.A.*, 2019 U.S. Dist. LEXIS 146553 *21

(S.D.N.Y. Aug. 28, 2019) *citing Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F.

Supp. 3d 729, 771 (S.D.N.Y. 2018) (internal quotation marks and citation omitted); see, e.g. *Hudak*

*v. Berkley Group., Inc.*, No. 13-CV-89, 2014 U.S. Dist. LEXIS 8168, 2014 WL 354676, at *10-11

(D.Conn. Jan. 23, 2014) (complaint clearly alleges that the two defendants acted jointly in their

wrongful conduct; "[p]rior to discovery, plaintiff need not explain the details of each defendant's

role in the planning, funding, and executing defendants' alleged . . . scheme. Nothing in Rule 8

prohibits collectively referring to multiple defendants where the complaint alerts defendants that

identical claims are asserted against each defendant."). Here, the allegations of the FAC make

plain that Plaintiff attributes the infringing conduct to all three Defendants and that the Defendants

are all related and acted jointly.

When considering Defendants' "group pleading" challenge, the Court also should be aware

that Defendants' counsel, in response to Plaintiff's request for identification of the correct Louis

Vuitton Defendant(s) for inclusion in the proposed FAC, specifically identified the two named LV

Defendants (*i.e.*, Louis Vuitton Malletier and Louis Vuitton USA, Inc.) as the correct Louis

Vuitton corporate entities to respond to the allegations of Plaintiff's complaint. Defendants'

argument also misses the point when they repeatedly assert that the FAC is deficient for failing to

"explain with factual detail who did what, when and how . . .." (Defs.' Mem. at 28; emphasis

added). Defendants are incorrect because their argument would expand Rule 8's command of a

"short and plain statement of claim" well beyond what is intended or required.

Defendants' arguments also miss the point with respect to their reference to FAC,

Paragraphs 1-3. These three introductory Paragraphs, which are collectively captioned "Nature of

the Action," summarize Plaintiff's claims. In so doing, these FAC Paragraphs make it obvious that

Plaintiff's claims are being asserted against all three Defendants (*see* FAC, ¶ 3, "This action is directed against the unauthorized and wrongful design, manufacture, promotion, distribution, use and sale by Defendants . . . .").

Since Plaintiff did not have a course of dealing with Defendants, there is no way for it to know the precise role each Defendant played in the infringing activities.  Defendants' other "criticisms" of the FAC (*see* Defs. Mem. at 29-30) such as questioning which Defendant introduced the "Offending Goods" at the Louis Vuitton fashion show or which Defendant "designed" the Offending Goods and so on and so forth, are all matters for discovery, and are not pleading deficiencies at this stage of the proceeding.  Given the specificity of the FAC's allegations (see FAC, ¶¶ 40-44, 47, 49-50, 54-57, 59, 64-65, 67-69, 71-73, 75-76 and 77-79) and the legal authority cited above, nothing more is required of Plaintiff at this stage of the proceeding.

### 2.    Defendants' Legal Authority is Inapposite

Defendants cite only two cases to support their contention that the FAC is non-compliant with Rule 8.  Both citations are inapposite to this case. The first case, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001), is a Second Circuit summary order from 2001.[3] *Atuahene* involved a *pro se* plaintiff whose complaint lumped together a number of unrelated defendants on a host of constitutional and state common law claims.  Atuahene's complaint also failed to identify any factual basis for the legal claims made. Even though he was given several opportunities to amend his complaint, the Plaintiff in *Atuahene* never identified which defendants were responsible for which alleged violations. In the circumstances, the Second Circuit affirmed the District Court's exercise of discretion in dismissing the complaint.

---

[3] Under the Local Rules for the Second Circuit (*see* 2d Cir. R. 32.1.1(a), (b)(2)), summary orders have no precedential effect, and parties may not cite a summary order issued prior to January 1, 2007, except in two circumstances, neither of which is present here.

In Defendants' other proffered authority, *Ochre LLC v. Rockwell Architecture Planning & Design P.C.*, No. 12-CV-2837, 2012 U.S. Dist. LEXIS 172208 (S.D.N.Y Dec. 3, 2012), aff'd 530 App'x 19 (2d Cir. 2013), the Court dismissed a copyright-infringement claim where the plaintiff sued four entirely separate entities —- a design firm, an architect, a hotel, and a procurement agent -— without separating out the "key allegations against each defendant." *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-5449 (NSR), 2015 WL 7758894, at *3 (S.D.N.Y. Dec. 1, 2015) (*quoting Ochre*, 2012 U.S. Dist. LEXIS 172208, at *16).

Unlike in *Ochre* and *Atuahene*, where the defendants were entirely separate entities, the Defendants in the instant case are all related to each other and acted jointly, and the FAC alerts them that identical claims are being asserted against each of them.

## V.    CONCLUSION

Based on the foregoing, Defendants' dismissal motion should be denied in all respects.

Dated: November 20, 2025

Respectfully Submitted,

By: _____

**COX LAW FIRM LLC**
William H. Cox, Esq.
Peter J. Vranum, Esq.
43 West 43rd Street, Suite 137
New York, NY 10036-7424
Tel. No.: (973) 973-1797
WCox@lawcox.com
PVranum@lawcox.com

By: _____

**LAW OFFICES OF H.W. BURNS**
Howard W. Burns, Jr., Esq.
Carnegie Hall Towers – 37th Floor
(Baritz & Colman)
152 West 57th Street
New York, New York 10019
Tel. No.: (917) 885-5671
Howard@HWBurnsLaw.com

**Attorneys for Plaintiff COOGI Partners, LLC**

## CERTIFICATE OF COMPLIANCE

1. I, William H. Cox, counsel for Plaintiff, COOGI Partners, LLC, hereby certify that this Memorandum of Law complies with the formatting and length requirements set forth in the Local Civil Rules of the United States District Court for the Southern District of New York, including Local Civil Rule 7.1 and the Court's Individual Practices.

2. This Memorandum of Law has been prepared in 12-point typeface, double-spaced (except for headings, block quotations, and footnotes), with one-inch margins on all sides.

3. I further certify that this Memorandum of Law contains 8,388 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word- processing system used to prepare this document. This total is under the 8,750-word limit permitted by the Court's rules for memoranda of law.

William H. Cox

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, I caused a true and correct copy of the foregoing document to be served on all counsel and parties of record via electronic mail.

_____
William H. Cox