**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COOGI PARTNERS, LLC,

    *Plaintiff*,

        v.

LOUIS VUITTON MALLETIER, S.A.,
LOUIS VUITTON USA, INC., and
PHARRELL WILLIAMS

    *Defendants*.

Civil Action No. 1:25-cv-3837-KPF

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.   The Works Are Not Substantially Similar. ................................................................ 2

     A.  COOGI Fails to Allege Any Protectable Elements That Were Copied. .......................... 2

     B.  The "Total Concept And Overall Feel" Test Requires More Than Shared Style. ............ 3

     C.  One Look at the Works Shows They Are Not Substantially Similar. .............................. 4

     D.  COOGI's Reliance on "Overall Aesthetic Impressions" Confirms This Lawsuit Is About
         Style, Not Expression. .................................................................................................. 6

     E.  Access Without Substantial Similarity Is Meaningless. ................................................. 7

II.  COOGI Still Fails to Meet the Heightened Burden for a Product-Line Trade Dress. ........... 7

     A.  COOGI Has Not Defined Any Specific Set of Trade Dress Elements. .......................... 7

     B.  The *Concannon* Decision Requires Dismissal of COOGI's Trade Dress Claim. ............. 9

     C.  Discovery Will Not Cure COOGI's Functionality Problem. .......................................... 13

     D.  COOGI Still Cannot Allege Secondary Meaning. ........................................................ 14

III. COOGI Still Has Not Plausibly Alleged Likelihood of Confusion. ................................. 14

IV.  COOGI's Other Claims Fail Without a Protectable Trade Dress. ................................... 16

V.   COOGI's Group Pleading Still Violates Rule 8. ......................................................... 16

CONCLUSION ................................................................................................................. 17

**TABLE OF AUTHORITIES**

Cases

*American Rolex Watch Corp. v. Ricoh Time Corp*., 491 F.2d 877, 879 (2d Cir.1974) ............... 15

*Beastie Boys v. Monster Energy Co*., 66 F. Supp. 3d 424, 448 ................................................... 16

*Bose Corp. v. Linear Design Labs*, 467 F.2d 304, 310 (2d Cir.1972) .......................................... 15

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992)(............ 15

Christian Louboutin S.A. v. YSL Am. Holding, Inc., 696 F.3d 206, 217 (2d Cir. 2012) ............ 14

*Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373–74 (Fed. Cir. 2012) ....... 16

Concannon v. LEGO Sys., Inc., No. 3:21-CV-01678 (JBA), 2023 WL 2526637 (D. Conn. Mar.

15, 2023) ................................................................................................................... 8, 13

*DO Denim, LLC v. Fried Denim, Inc.,* 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ................... 14

*Eden Toys, Inc. v. Marshall Field & Co.*, F.2d 498, 500-01 (2d Cir. 1982).................................. 4

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,  499 U.S. 340, 348 (1991). ......................................... 2

*Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 289 (S.D.N.Y. 2016) .......................................... 2

*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 299 (S.D.N.Y. 2002) .......................... 6

*Int'l Leisure Prods., Inc. v. Sunnylife Australia*, No. 16-CV-6215 (NSR), 2018 WL 1305712, at

*6 (S.D.N.Y. Mar. 12, 2018) ........................................................................................ 13

*Knitwaves, Inc. v. Lollytogs, Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995) ..................................... 4, 14

*Lewinson v. Henry Holt & Co.*, 659 F. Supp. 2d 547, 563 (S.D.N.Y. 2009) ............................... 7

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y.

2012) ........................................................................................................................... 15

*Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 385 (S.D.N.Y. 2008)........................ 15

Nat'l Lighting Co. v. Bridge Metal Indus., 601 F. Supp. 2d 556, 563 (S.D.N.Y. 2009).............. 15

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67-68 (2d Cir. 2010).........

.................................................................................................................... 1, 2, 3,6

*Reyher v. Children's Television Workshop*, 533 F.2d. 87, 91-92 (2d Cir. 1976) ......................... 3

*Roberts v. Bliss*, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017)........................................................ 14

*S.A. v. YSL Am. Holding, Inc.,* 696 F.3d 206, 217 (2d Cir. 2012) ......................................... 14, 15

*Sara Designs, Inc. v. A Classic Time Watch Co. Inc*., 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017)9

*Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) ............ 8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 34-35 (2001) .................................... 1

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 .................... 3, 4

*Walt Disney Co. v. Goodtimes Home Video Corp.,* 830 F. Supp. 762, 767 (S.D.N.Y. 1993). ....... 8

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) ............................................ 1

## INTRODUCTION

COOGI's claims are fundamentally defective because they seek to monopolize elements that copyright and trademark law do not protect.[1] COOGI wants exclusive rights to an aesthetic—colorful, textured knitwear—that belongs to fashion history, not to any single company. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67-68 (2d Cir. 2010)(copyright protection does not extend to "an idea, concept, or style"); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 34-35 (2001)(trade dress protection cannot be used to create a perpetual monopoly on functional or generic features). Allowing COOGI's claims to proceed would prevent any designer from creating colorful, textured knitwear without risking litigation, stifling creativity and harming competition contrary to the purposes of intellectual property law.

With respect to copyright, COOGI, throughout its FAC and Opposition, asks the Court to ignore expressive creative choices like color, fabric, texture, and artistic arrangement—the very elements copyright protects—and focus instead on non-protectable knitting techniques upon which COOGI's claim hangs. Indeed, the FAC identifies no protectable elements that Defendants allegedly copied; instead, it admits Defendants "rearranged these techniques" and "moved" elements (FAC ¶ 18), acknowledging the designs differ in the expressive choices that matter.

As for trade dress, COOGI's claim fails on its own evidence. The FAC attaches photos of multiple COOGI sweaters that vary significantly from each other in color scheme, patterns, textures, and layouts and demonstrate no consistent, protectable trade dress exists. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (trade dress requires a uniform, consistently used design that consumers associate with a single source).

---

[1] Defendants' opening brief sets forth all defined terms used herein. (ECF No. 50).

The trade dress claim fails for an independent reason: no likelihood of confusion. Every Louis Vuitton garment at issue prominently features Louis Vuitton's trademarks—the LOUIS VUITTON word mark, the Toile Monogram, and the Damier design—some of the most recognized trademarks in the world. A consumer confronting a garment plainly labeled "VUITTON," or bearing the Monogram or Damier design, simply would not believe it originated with COOGI.

The Court can resolve this case by examining the works side-by-side as Second Circuit law permits. *Peter F. Gaito Architecture, LLC*, 602 F.3d at 63 (dismissing infringement claims after a visual comparison of the works at issue). Here, the comparison reveals unmistakably different designs serving different markets with no potential for confusion. The FAC should be dismissed in its entirety with prejudice.

## ARGUMENT

### I.    The Works Are Not Substantially Similar.

#### A.    COOGI Fails to Allege Any Protectable Elements That Were Copied.

COOGI never answers the threshold question: which specific creative choices from the COOGI Copyright did Defendants allegedly copy? The FAC alleges only that Defendants copied non-protectable "techniques": (1) thick tubular welt, (2) checker rope tubular welt, (3) eye technique, (4) lip technique, and (5) flechage technique. (FAC ¶¶ 16-17); (Opp at 7-9.) Copyright does not protect these techniques; it protects the specific creative choices about how to use and arrange them. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).

The FAC rests on allegations that Defendants "rearranged" and "moved" certain non-protectable knitting "techniques." (FAC ¶ 18; Opp. at 3, 7.) But Second Circuit precedent is clear that stylistic adaptations are not protectable expression. *See, e.g., Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 289 (S.D.N.Y. 2016)(finding reliance on unprotected ideas undermines a claim

of substantial similarity); *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (copyright infringement requires copying of specific expressive choices, not general decorative concepts). Rather than address this precedent, COOGI attempts to retract its allegations that refer to aspects of the COOGI Copyright as "techniques" and claims that these techniques are specific design concepts that are protectable. (Opp. at 7.) Rephrasing its allegations will not change the fact that what the FAC describes as the "COOGI Aesthetic"—a combination of multicolor textured knitting and abstract patterning—is not protectable expressive work. *Peter F. Gaito Architecture, LLC*, 602 F.3d 57, 67-68 (2d Cir. 2010).

### B.    The "Total Concept And Overall Feel" Test Requires More Than Shared Style.

COOGI argues that copyright protects "the total concept and overall feel" of a work and suggests that this test allows it to claim infringement based on general aesthetic similarity. (Opp. at 7.) COOGI misunderstands how courts apply this test.

Although relied on by COOGI, the *Tufenkian* case undermines its position. That case, which applied a "total concept and overall feel" test to determine what separates infringing copies from non-infringing adaptations, relied on the specific differences in the individual elements of the designs in analyzing similarity of the works. *Tufenkian*, 338 F.3d at 133-34 (citing *Reyher v. Children's Television Workshop*, 533 F.2d. 87, 91-92 (2d Cir. 1976) (applying "total concept and overall feel" analysis and finding no infringement where "in all respects other than the sequence of events, the works were very different.")). Thus, contrary to COOGI's assertion, *Tufenkian* emphasizes that the host of differences in the expressive elements of the COOGI Copyright and the Accused Design—wholly divergent color schemes, fabrics, textures, knitting techniques, and arrangement of colors and patterns—are highly relevant to the substantial similarity analysis. *Tufenkian*, 338 F.3d at 133-34 (citing *Eden Toys, Inc. v. Marshall Field & Co.*, F.2d 498, 500-01

(2d Cir. 1982) (applying total concept and overall feel and noting the "host of differences in the designs").

Likewise, *Knitwaves, Inc. v. Lollytogs, Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995) is not helpful to COOGI's claim. (Opp. at 7.) There, the accused design was strikingly similar to the original. Specifically, the accused design: (1) used virtually the same color scheme, (2) featured the same two fall symbols that were rendered to be nearly identical and used in the same manner as the original design, and (3) employed a conspicuously similar background. *Id.*, 71 F.3d at 1004. Here, the Accused Design uses a strikingly *different* color scheme, composition, and arrangement of patterns and textures. The Accused Design also features the iconic VUITTON word mark and distinctive Toile Monogram and Damier designs. Unlike in *Knitwaves*, there are no similarities between the COOGI Copyright and the Accused Design that would cause an ordinary observer (or a more discerning one) to mistake the Accused Design for the COOGI Copyright. *Id.*

C.    **One Look at the Works Shows They Are Not Substantially Similar.**

COOGI argues that "the design of the Offending Goods is clearly substantially similar to that of the COOGI Rag & Bone Design" and, like Defendants did in their opening brief, invites the Court to conduct a visual comparison. (Opp. at 9.) When this Court compares the works, it will see immediately that they are dissimilar in every meaningful way:

4

**The COOGI Copyright (FAC, Ex. A)**



Random curlicues

Rag & Bone word mark

Geometric Patterns

Striped banding

Ribbed cabling

**The Accused Design (FAC, Ex. B)**



Monogram trademark

VUITTON word mark

Damier trademark

- Irregular, asymmetrical arrangement
- Chaotic, unpredictable pattern flow
- High-contrast color clashes
- Abstract, collage-like composition
- No consistent geometric motifs
- Dense, cluttered visual impression
- Rag & Bone word mark only

- Organized, symmetrical sections
- Controlled, deliberate repetition
- Restrained, harmonious color palettes
- Structured, architectural layout
- Repeated oval and circular elements
- Clean, refined visual impression and aesthetic
- Multiple elements of Louis Vuitton branding

As the above photos demonstrate, the Accused Design uses a repeating pattern of specific elements: dark pink and white patterns featuring the Toile Monogram, next to a dark pink Damier design, next to a lighter pink and white Toile Monogram pattern, next to a plum and pink polka dot pattern, and so on. The COOGI Copyright, by contrast uses a haphazard, non-repeating pattern. Moreover, even the non-protectable "techniques" that COOGI alleges the Accused Design copies—like the flechage lens—look nothing like those used in the COOGI Copyright. *See* above visual; FAC at 6.

Finally, COOGI mischaracterizes Defendants' point regarding the effect, on the substantial similarity analysis, of the use of Defendants' trademarks throughout the Accused Design. (Opp. at 9.) Defendants' point is that the works are visually dissimilar—and one factor contributing to that dissimilarity is the Accused Design's prominent use of multiple elements of Louis Vuitton's iconic branding ("VUITTON" word mark, Toile  Monogram, and Damier design), while the COOGI Copyright features repeated use of the RAG & BONE word mark. Indeed, the Accused Design embeds Louis Vuitton's own branding as part of the pattern itself, which the COOGI Copyright design does not do. *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 299 (S.D.N.Y. 2002) (quoting *Yurman*, 262 F.3d at 118). The use of Defendants' branding  is relevant to overall visual impression.

Just as the Second Circuit affirmed dismissal in *Gaito* after comparing the works and finding no substantial similarity, this Court should dismiss COOGI's copyright claim based on the clear differences revealed by a side-by-side comparison. *Gaito*, 602 F.3d at 64.

### D. COOGI's Reliance on "Overall Aesthetic Impressions" Confirms This Lawsuit Is About Style, Not Expression.

Throughout its Opposition, COOGI argues that Defendants copied "COOGI's artistic concepts," "overall aesthetic impressions," the "COOGI aesthetic," and the "overall look of the

COOGI design." (Opp. at 1, 7.) These phrases reveal the fundamental flaw in COOGI's case: it is seeking to protect a style, not specific creative expression. If COOGI could identify specific protectable elements that Defendants copied, like particular color sequences, specific pattern placements, unique compositional choices, it would do so. Instead, COOGI relies on vague generalities about "aesthetics" and "concepts" because it cannot point to any concrete expressive elements that were copied.

### E. Access Without Substantial Similarity Is Meaningless.

COOGI claims indirect access by pointing to Defendants' reference to "early 2000s street style." But that description is not proprietary and, contrary to COOGI's claim, COOGI sweaters are not the only streetwear that fit the description. (Opp. at 8.) The reference to "early 2000s street style" refers to a broad cultural aesthetic inclusive of many prominent streetwear brands. Moreover, many of these brands, like LRG, Akademiks, Sean John, Phat Farm, and Pelle Pelle, were known for bold, colorful knitwear.[2]

Even assuming COOGI adequately pleaded access—it did not—access must be accompanied by probative similarity and then substantial similarity. *Lewinson v. Henry Holt & Co.*, 659 F. Supp. 2d 547, 563 (S.D.N.Y. 2009). As COOGI's own exhibits show, there is no similarity here and no substantial similarity.

## II. COOGI Still Fails to Meet the Heightened Burden for a Product-Line Trade Dress.

### A. COOGI Has Not Defined Any Specific Set of Trade Dress Elements.

COOGI seeks trade dress protection over a line of products but fails to allege a clearly defined trade dress that is *consistent across all products* in the line. *Walt Disney Co. v. Goodtimes*

---

[2] COOGI's own evidence shows it was not the only brand known for bold, colorful knitwear in the 1990s. Exhibit H notes: "…the truth is, most of the colorful sweaters [Bill Cosby] wore on 'The Cosby Show' were designed by Dutch fashion designer Koos van den Akk." (FAC, Ex. H. at 5.)

*Home Video Corp.*, 830 F. Supp. 762, 767 (S.D.N.Y. 1993). Instead, COOGI argues that the FAC is "more detailed and specific" than the trade dress description in *Concannon v. LEGO Sys., Inc.*, No. 3:21-CV-01678 (JBA), 2023 WL 2526637 (D. Conn. Mar. 15, 2023). (Opp. at 10.)

But *Concannon* doesn't help COOGI here. In that case, the court accepted a concise trade tress definition *because* it could visually identify consistency between plaintiff's trade dress definition and his trade dress samples. *Concannon*, 2023 WL 2526637, at 13. Here, COOGI's allegations demonstrate the opposite. COOGI alleges that its supposed trade dress has multiple combinations that are displayed "variously" depending on the garment. (FAC ¶ 21.) This is the exact scenario that the *Concannon* court found does not support a plausible trade dress claim: an aesthetic that fluctuates across products and fails to demonstrate how the varying elements form any single trade dress.

Further, this Court has already rejected the approach COOGI advances. *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016)(holding that the Court . could not "distill the distinctive elements of [plaintiff's] trade dress from a collection of photos" and dismissed plaintiff's claims). COOGI makes the same mistake: the FAC lists individual features of its claimed trade dress but never explains *how* they operate together to create a coherent trade dress across products.

COOGI cannot provide this explanation. Its own exhibits show conflicting aesthetics in nearly every respect: stark differences in color palette, width and spacing of cables, placement and orientation of patterns, degree of stitch layering, geometric versus looping motif, and the presence or absence of vibrant color. *See* (FAC Exs. A–E.) Tellingly, COOGI asserts that its black-and-white Rag and Bone Design is a "typical example" of its trade dress (FAC ¶ 23), while simultaneously claiming that vibrant color combinations are the hallmark of COOGI's alleged

8

trade dress. (FAC ¶¶ 19-21). COOGI's contradicting allegations are fatal to the plausibility of its trade dress claim. Like in *Tracey Tooker*, COOGI's trade dress claim should be dismissed.

**B.    The *Concannon* Decision Requires Dismissal of COOGI's Trade Dress Claim.**

COOGI claims that the FAC shows a consistent, cohesive trade dress because each of their examples reflects the elements listed the FAC. (Opp. at 11.) COOGI further claims that any visual variation between its trade dress examples cannot be resolved on a motion to dismiss and that *Walt Disney* is not instructive because it was resolved on summary judgment. (Opp. at 11.) COOGI's argument misses the point.

When a plaintiff's own allegations demonstrate the implausibility of its claim, discovery and expert testimony is not necessary. *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.,* 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017). COOGI had every opportunity to select its strongest examples. If these are its best examples, they defeat the claim outright. The exhibits reveal variation, not identity. At most, they depict shifting aesthetics across products, not a consistent source-identifying trade dress.

**Examples of COOGI's Alleged Trade Dress (FAC, Ex. B-E)**

















 

COOGI never explains how its allegations meet the standard applied in the *Concannon* case. (Opp. at 11.) In *Concannon*, the court found that minor differences in text color, length, or placement were immaterial because plaintiff did not claim these elements in his alleged trade dress. *Concannon*, 2023 WL 2526637, at 14. Here, by contrast, COOGI expressly claims specific color arrangements, intricate designs, vertical and horizontal cable placement, and raised three-dimensional knitwork as defining features of its alleged trade dress. (FAC ¶ 20.) The problem is, COOGI's own exhibits show that each of these elements fluctuates significantly from garment to garment. *Concannon* does not support COOGI's position—it forecloses it.

### C.    Discovery Will Not Cure COOGI's Functionality Problem.

COOGI claims that discovery will cure its functionality problem. (Opp. at 11-12.) It won't. That is because the FAC itself describes purported trade dress elements that are generic, widely used in the industry, and inherently aesthetic. (FAC ¶¶ 20-22.) The Lanham Act does not grant exclusive rights over common knitting techniques or broad use of color. And COOGI identifies no stitch structure, pattern configuration, spacing, or arrangement that sets its garments apart from industry norms. The trade dress claim should be dismissed. *Int'l Leisure Prods., Inc. v. Sunnylife Australia*, No. 16-CV-6215 (NSR), 2018 WL 1305712, at *6 (S.D.N.Y. Mar. 12, 2018)(granting

a motion to dismiss when plaintiff did not allege facts sufficient to address the aesthetic functionality inquiry); *DO Denim, LLC v. Fried Denim, Inc.,* 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (dismissing trade dress claim for failure to plead any facts in support of the contention that their purported trade dress is "unique and nonfunctional").

### D.    COOGI Still Cannot Allege Secondary Meaning.

COOGI's Opposition conflates brand recognition with trade dress distinctiveness. (Opp. at 13-15.) The celebrity endorsements, social media posts, and fashion articles alleged in the FAC to establish secondary meaning (Opp. at 13-15) fail to show that consumers recognize COOGI sweaters by their visual appearance alone, or that they associate the specific combination of elements COOGI claims—"vertical colorful cables with horizontal sleeve patterns and raised texture"—with COOGI. These allegations establish only that people associate COOGI with colorful 1990s knitwear generally. This is brand recognition, not distinctive trade dress. *See Knitwaves, Inc.,* 71 F.3d at 1008.

## III.    COOGI Still Has Not Plausibly Alleged Likelihood of Confusion.

COOGI seems to think that just because it says that it has adequately pleaded confusion through conclusory restatement of the *Polaroid* factors, its trade dress claim is not subject to dismissal. (Opp. at 15-20.). First, confusion cannot be considered unless the complaint pleads a valid and identifiable trade dress, which COOGI has not done. *Christian Louboutin S.A. v. YSL Am. Holding, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012). Second, when it is apparent on the face of the complaint that confusion is implausible, courts need not apply the *Polaroid* factors at all. *Roberts v. Bliss*, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017) (courts grant motions to dismiss "where simply looking at the work itself … demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work.'"); *Louis Vuitton*

*Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (noting courts need not rely on the likelihood of confusion factors).

COOGI incorrectly claims that this Court need not consider the effect on the likelihood of confusion of Defendants' prominent branding featured on the Accused Design. The Second Circuit has long held that conspicuous labeling weighs heavily against confusion. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992)(holding that "[t]he presence and prominence of markings tending to dispel confusion … is highly relevant to an inquiry concerning the similarity of the two dresses")(*citing American Rolex Watch Corp. v. Ricoh Time Corp*., 491 F.2d 877, 879 (2d Cir.1974) (holding that "Rolex's reliance upon [section 43(a)] appears to be misplaced in view of the prominent display of 'Ricoh' on the challenged watch.")(*also citing Bose Corp. v. Linear Design Labs*, 467 F.2d 304, 310 (2d Cir.1972) (holding that "there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed").

When an alleged infringer unmistakably identifies itself, a likelihood-of-confusion claim necessarily fails. *See Nat'l Lighting Co. v. Bridge Metal Indus.*, 601 F. Supp. 2d 556, 563 (S.D.N.Y. 2009). The FAC does not allege that Defendants attempted to pass off its products as COOGI garments or that Defendants hid or downplayed their branding. *See generally* FAC. Instead, the FAC alleges third-party commentary describing Defendants' products as inspired by or evoking COOGI. (FAC ¶ 45.) Commentary that a work evokes another's style establishes nothing beyond stylistic similarity. *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 385 (S.D.N.Y. 2008). It does not establish mistaken belief about origin. Aesthetic resemblance is not consumer deception, and trademark law does not transform recognition into confusion.

**IV.    COOGI's Other Claims Fail Without a Protectable Trade Dress.**

COOGI's Opposition recasts its remaining Lanham Act and state-law claims as standalone theories. They are not. Each cause of action requires Plaintiff to plead a discernible, source-identifying trade dress. Because the FAC never alleges a consistent visual configuration capable of functioning as trade dress, each derivative claim also fails.

Defendants' references to "street style" and "early 2000s inspiration" do not imply false endorsement. (Opp. at 20.) In addition, the FAC does not allege that consumers believed COOGI approved, authorized, or participated in the Accused Design, and it does not claim that Defendants used COOGI's name in advertising, displayed COOGI's mark, or in any way suggested collaboration. *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 448 (the plaintiff band was explicitly named).

COOGI pleads no facts to support a claim that its trade dress is "famous," and this omission is fatal to its dilution claim. *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373–74 (Fed. Cir. 2012) (holding that the COACH fashion mark was not famous). Finally, the FAC identifies no unfair conduct other than the alleged copying of trade dress, and thus COOGI's unfair competition and New York state law claims fail. (Opp. at 21-22.)

**V.    COOGI's Group Pleading Still Violates Rule 8.**

COOGI argues that the FAC adequately identifies each Defendant's role because it "makes plain that Plaintiff attributes the infringing conduct to all three Defendants" and alleges they "acted jointly." (Opp. at 24.) This is circular reasoning. Saying "all three defendants did it together" does not explain what "it" is or who did what; and does not satisfy Rule 8. Even under notice pleading, a plaintiff must give each defendant fair notice of the claims and the grounds upon which they rest. COOGI's complaint does not tell LVM, LVUSA, or Pharrell Williams what specific actions each allegedly took.

## **CONCLUSION**

For the foregoing reasons and for the reasons stated in Defendants' opening brief, Defendants respectfully submit that the Court should dismiss the First Amended Complaint in its entirety, with prejudice.

Dated:  December 5, 2025                    Respectfully Submitted,

/s/ Vivek Jayaram.
Danielle M. Audette
Palak V. Patel
Jayaram PLLC
54 West 21st Street, Suite 801
New York, New York  10010
312-736-1226
vivek@jayaramlaw.com
dani@jayaramlaw.com
palak@jayaramlaw.com

17

## CERTIFICATE OF COMPLIANCE

1       I, Vivek Jayaram, counsel for Defendants Louis Vuitton Malletier, S.A., Louis Vuitton USA, Inc., and Pharrell Williams, hereby certify that this Memorandum of Law complies with the formatting and length requirements set forth in the Local Civil Rules of the United States District Court for the Southern District of New York, including Local Civil Rule 7.1 and the Court's Individual Practices.

2       This Reply Memorandum of Law has been prepared in 12-point typeface, double-spaced (except for headings, block quotations, and footnotes), with one-inch margins on all sides.

3       I further certify that this Memorandum of Law contains 3,499 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word- processing system used to prepare this document. This total is under the 3500-word limit permitted by the Court's rules for reply memoranda of law.

/s/   *Vivek Jayaram*
Vivek Jayaram

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2025, I caused a true and correct copy of the foregoing document to be served on all counsel and parties of record via electronic mail.


<u>/s/   *Vivek Jayaram*</u>
Vivek Jayaram